Good morning, Your Honors. Janine Manhattan on behalf of Appellants. First of all, I'd like to thank Mr. Rosenblatt for admitting that in California this type of postluminary activity is compensable. Also, defense's argument that employees are incentivized to go slow is directly contrary to what the legislature and the state have said, that we are duty bound to construe all laws in favor of employees. I'm familiar with the Vance case and I'm thankful that I'm in California. Because as familiar and as reasonable as the filsa might sound, California has made numerous proclamations that we do not follow the Port of Deportal Act and we don't follow the filsa. Every opportunity the California Supreme Court gets, it reaffirms its commitment to interpret all laws to provide the maximum protection to employees. In other words, unlike in Vance, the California Supreme Court has made an express affirmative departure from the filsa. In Mendiola, it says we decline to import any federal standard which expressly eliminates substantial protection to employees. In Merillion, further rejecting Royall's contention, we conclude the federal statute scheme, which differs substantially from the state scheme, should be given no deference. Again in Merillion, the labor code and the IWC wage orders do not contain an express exemption for travel time similar to that of the Port of Deportal Act. We do not agree with the Court of Appeal that the rest of the federal and state statutory schemes are similar. It is important to know that the IWC wage orders were passed in 1913, more than two decades before the filsa was passed and three decades before the Port of Deportal Act was passed. In 1947, when the Port of Deportal Act was passed, the IWC reacted immediately to protect the employees by inserting that exemption. In Martinez, the IWC's definition of hours worked belongs to a set of revisions intended to distinguish state wage law from the filsa. Just a few months ago, in Alvarado v. Dart Container Corp., 4 Cal 5, 542 at 554, it is well settled that federal law does not and therefore state law is controlling to the extent it is more protective of workers than federal law. So to that extent, I would invite the Court to consider this a departure from Vance. As I've mentioned, the wage and hour laws in California are to be construed so as to promote employee protection. That's in Mendiola. And in Augustus v. ABM Security Services in 2016, time and again we have considered the purpose of construing the labor code and the protection of employees. So what is California law? It's pretty clear the definition of hours worked is expanded by, rather than limited to, the time spent when an employee has suffered or committed to work. In Bono, Enterprises v. Bradshaw, control is when an employer directs, commands or restrains. In Bono, the employees were not allowed to leave the plant, the building for their lunchtime. This was found to be a violation. That lunchtime had to be paid for because they weren't allowed to leave the building. Although this may seem unreasonable, that's the law in California. Under California law, it is only necessary that the worker be subject to the control of the employer in order to be entitled to compensation. It's You don't have to be working in California to get compensated. In Mendiola, sleep time is compensable. On-call hours are compensable. In California it's been settled now that home health care workers who are there sleeping and not allowed to leave the client's house during the night, those eight hours are compensable because they're restrained from leaving. In workers were sleeping in the trailer on the premises. All of that sleep time is compensable because they were not allowed to leave. Hours worked as any time the employee is subject to the control of an employer. It's an independent factor. In Marillion, an employee who is subject to the employer's control does not have to be working during that time to be compensated. So the district courts... Counsel, does your argument hinge on whether the employee is required to undergo the security screening? Is the argument reducible to that or not? It is, Your Honor. The issue we presented for appeal is, is the security screening time compensable? It's mandatory. They're not free to leave. Therefore, it's compensable under California law. California law has all kinds of things that the court might find unreasonable. Lunch time is hours worked. On-call time is hours worked. Sleep time is hours worked. And also, if the court isn't familiar with this, in California, lunch breaks and rest periods have to be completely duty-free. And if they're not, the employer has to pay the employee an hour of compensation at their regular rate. And just recently, we figured out that airport workers going on their rest breaks, if they carry their radios with them and they're not allowed to turn off their radio during their rest break, that's a compensable event. They get an extra hour of compensation for a rest break that's not compliant with the duty-free concept. So California is all about, you know, either you're duty-free on your breaks or if you're under the control of the employer and you can't leave, that is compensable. And that's why we feel like the time that these people are not allowed to leave is compensable under California law. We feel that's very clear. And we feel like the district court, in relying on the Apple decision, which looks like it's on life support in California, really took a left turn when it started talking about what constitutes work. This was just passive. That's a total portal-to-portal concept which California has rejected every single time it comes up. Let me ask you a practical question. So here we are in the Midwest, and this case is going to turn on interpretation of California law. And we have a situation where the Ninth Circuit Court of Appeals certified at least one of the important questions in this case to the Supreme Court in California, and that court has taken the question. What's your view as to whether we should wait for the California Supreme Court to clarify this first question? When we first filed this appeal, we also filed a motion to stay this appeal until the Apple question and the Starbucks question were decided. And this court declined to do so. And in our opening brief and in our reply brief, I again reiterated our request to have the California Supreme Court decide this issue. It wants to decide this issue. It's taken up the de minimis issue. It's taken up the security search issue. It wants this. The Ninth Circuit didn't want it. They said, we're not sure we're deciding this right. They took a step back from Lindo, which has been on the books for three decades now, which instituted the de minimis test. And they're all, wait a minute, that sounds like a lot of filsa law to us. Maybe we should take a step back and say, I'm not sure we got that right. California Supreme Court, why don't you let us know if that's really the law in California? And so I would invite the court to consider whether it should either defer ruling on this or we also made a motion to certify this question to the California Supreme Court and perhaps grant that motion. Well, what is it in the certified issue to the California Supreme Court which is not sufficiently clear on the current California law that we can't rule that we should await the ruling of the California Supreme Court? Well, I believe a lot of Appley's arguments are, oh, this is, it was such fast time, it was so fast, and da, da, da, da, da. However, that's a damages question. That's how much time was spent. It's not whether this time is compensable in the first place or not. It's liability versus damages. And they're, oh, it's such a small time spent. That's de California. It's really important to note that no California published decision has ever applied the de minimis test. And their defense hinges almost exclusively on de minimis and, oh, this does not work. You would agree if we take the precise certified question. Yes. Yes. Is time spent on the employer's premises waiting for and undergoing required exit searches of packages or bags voluntarily brought to work purely for the personal convenience of the employee. If the answer is no, then the case here is over. If the answer is yes, it gets a little more complicated. But if the answer is no, this case is over. Well, our case is a little bit different because we don't have the, for the personal convenience of the employee's factor that the Apple case has. This is mandatory. Everyone's going through whether they like it or not. So for, from that perspective, if that's the exact question the Apple court is deciding, it will, it may answer the question or it may not, depending on are they going to talk about personal convenience or not. There are two questions in this case, to be fair. That's the first one. The second one is, is this different because of the claim of the plaintiff in this case that the lockers are not secure? That's the second question. But the first question has to be answered to get to the second question. The California Supreme Court decision is still going to be a fundamental determiner in this case. Yes. Maybe not of every single issue, but of the first big issue. I think it will be broader than the question that was actually presented. I think the California Supreme Court wants to make a ruling on all of these security search cases, whether it's for the personal convenience of the employee or whether it's not. I think that decision may very well answer this case. I would like to mention to the court that I have notes from the Starbucks oral argument which occurred on May 1st. A couple of impressions were they were skeptical that the employer could not record the post-liminary time. They said if the time can be recorded, it should be paid. If it can't be recorded, it should be estimated and paid. The chief just mentioned that wage orders require payment for all time worked which cast doubt on the de minimis defense and anything else should be left to the legislature. The de minimis rule adopted in 1946 and technology to capture all time has changed dramatically since Mount Clements. No one on the panel was comfortable with construing 10 to 20 minutes of de minimis time. And they also were concerned that you can't reconcile the de minimis rule with labor code and wage order language requiring compensating all time worked. If the court would like a transcript from that oral argument, we'd be happy to supplement the record. I think it would be more helpful once we actually have what they decide as opposed to what they said. Yes, Your Honor. Richard Rosenblatt on behalf of Amazon. We've heard a lot and read a lot about what California does differently than the federal law. But you haven't seen us dispute that. We recognize and acknowledge that California does things differently than the federal law. The question in this case is whether those differences are dispositive of the outcome of this case. Practical question. As far as the California Supreme Court issue. So I know your position would be that the cases are not factually analogous is your view, right? Two things. The cases aren't factually analogous and the question really that is at the California Supreme Court is a very different question that's at issue before Your Honor. Well, it's related. In other words, your position would be the court in California could come down on the side of the plaintiff in the Fecklin case and you could still win in this court. That's your first position because the facts are different. Not only do I think we could win, I think we should win. Okay, hold that thought for a moment, all right? My point simply is that there will be an impact from the decision from the California Supreme Court on this case. It may not end the case, but it's the threshold question this court would have to answer. With all respect, not quite because the issue that was certified to the California Supreme Court really isn't the question of whether employee choice matters. If you read the Ninth Circuit Certification Order, it says the concern that they have and what they were asking the California Supreme Court to adjudicate was in the situation that was there presented where there's no doubt that technically employees in a retail outlet could have left a bag at home. Whether in this day and age, in reality, could they really and is it an illusory choice? Again, just a simple question. It's not a trick question. This decision could come out that would take at least half of this case and dispose of it in your client's favor. If they rule, the reason I'm hesitant to say that, because I don't think the issue in California is whether employee choice matters. That's a settled question. That's my point. In other words, if they were to come across with a blanket statement, under no circumstances is this type of time compensable, then we win. That's my point. And if they say, what they're going to say in California is not that employee choice doesn't matter. What they're going to say in California is potentially that in the Apple retail setting, where there's no lockers, no coat room, that the choice that was presented was illusory. As the Ninth Circuit suggested, where on the spectrum between Marillion and Overton does that case sit? When we get to that issue, we're not sure how they're going to answer that. We don't know. But what we do know here is that there was a choice. There is no dispute about the choice. And the plaintiffs are attempting to, and they've always attempted to blur this. Despite the fact that we have a summary judgment record that has, that demonstrates that there are the express lanes versus the regular lanes, that employees could decide to bring nothing on the warehouse floor because we accommodated them for their convenience to provide lockers outside. So there's no doubt that they had a choice. And counsel went through Did they say the lockers were insecure, getting broken into, so that was an illusory choice? But it was a choice. So the fact of the matter is she testified that plenty of people were lockers were fine. They weren't coming through with bags. Well, maybe they were using the express lanes not because the lockers were fine, but maybe they weren't bringing anything to work with them at all. And the people who, and others, did have to bring things, and then they were hesitant to use the locker. Yeah. Yes, they were probably in a different situation. I think the record is clear that people use lockers. And the plaintiff acknowledged she could use a locker. And there's one person out of all the people who worked at the Amazon facility for whom there's testimony that she didn't think that she was comfortable using a locker. The reality is we also presented statistical data that showed how fast people were getting out. And the reality is they were using the express lanes. And that's clear from the record. She said she saw people using them. And so whether it's because they were using the lockers or not, they clearly had a choice as to what to do. Whereas in the retail environment, think about it. I don't know if you've been to an Apple store. There's no anti-room where there'd be a locker. You go in, you open the door, you're in the store. So in order to have the anti-theft protection, they have to do the security check before. The other thing that is being blurred here is the suggestion that everybody went through a security check. That's just not true. Plaintiff's counsel went through a litany of things that premises. What she didn't identify, and we've never seen a case in state or federal court ever holding, is that the mere act of walking out of a facility is compensable. If you go through the non-express lane or the regular lane, and there's pictures of this in the record, what you're doing is you're putting stuff on a ramp and if you have a bag, you've got to get a check. But if you don't have any of that and you're going through the express lane, you could put some lattice work up, where you could have some facial recognition technology. You're still walking out. But you're walking through a metal detector, right? Yeah, but you're walking. You walked in the one today. It's fairly... No, it is absolutely different than the one that we walked in through today. The one we had to put my materials on the ramp and then they had to inspect them. When you walk out, if you look at the pictures in the record, you walk out, there is none of that. In fact, the plaintiff testified, she watched people walk unimpeded throughout, just as if they're... That's the way you are without a bag. You walk through a metal detector, you're going to set it off. Right, but there's no indication of that happening. The reality is, you set it off if you've made the decision to carry something... If you look at the pictures that we provided in the record of summary judgment before Judge Hale, there is signage up above the departure point saying, here's what not to wear, here's not what to carry. And if you make the decision, and we even provide nylon belts so that people don't have to wear a metal belt to go through. So that decision as to what you wear, and the reality is, tons of people do it without going through, without setting off a metal detector, that establishes, that proves the point that that is an employee choice. And if you look at California law, that's what controls. It's a real legitimate choice. We went out of our way. You see in the pictures in the record, there are literally banks of lockers, there are jackets hanging on hangers, outside of the secure area. And so what plaintiff is basically saying is, we should get paid for time walking out the door. And if we make the decision to carry a bag, or to carry as she did, our keys, we should get paid more than the person who read the signs and walked right out the door unimpeded. Think about that. They're asking not only for straight time for going through, they're asking for time and a half for going through because it's now overtime. That can't possibly be what the legislature intended to wear a choice as provided. And we don't have to speculate here because the case law has already told us what the legislature intended. If we take a categorical position that this type of screening is non-compensable, what happens to an employer who has a large shift change and has only one magnet topper? They are expensive, as you know. And the line backs up, minutes after minutes, then what? And I am absolutely not suggesting that you need to make a categorical determination, nor did we ask Judge Hale to do that. What we said is on the facts of this case that were developed through discovery, depositions, production of records, production of data, we don't have that case where there is a single anatometer. We have two exits. In each of the exit areas, there are two express lanes. People could and did regularly use them. The people who did what they were told to do in the signage to do. Plaintiffs want to say that California has run from the portal to portal act. And we agree that there are two prongs to the definition of what is work in California. One is the controlled by the employer prong. We acknowledge that that is, and this takes me back to the prior argument, Judge Sargas, that is an example where a state says we are going to do something different. They didn't have to do that. They could, under the analysis that we were arguing about in the last case, all they had to do was not mention the portal to portal act under the questions that were being asked to me. California recognized, no, they had to do more. They had to affirmatively depart from the model legislation and they put controlled by the employer in there. And that is what we have been arguing about here. The reality is different from the Frolking v. Apple case is there is no doubt that there was pure unadulterated choice here. Which then takes us to the second prong, which is the suffered or permitted to work prong. And interestingly enough, that is language that is derived word for word from the Federal Fair Labor Standards Act. And there is nothing to suggest that California intended a difference between the federal interpretation of suffered and permitted to work and the state co-opted term, suffered or permitted to work, and it says whether or not required by the employer. And so in that circumstance, you look to federal jurisprudence on what does that mean, and it is well settled in BUSC, in Vance, that it is well settled in the Supreme Court that one of the elements that has to be considered for something to be work is whether there is any exertive activity. There is a small exception to that, and that is for people who were hired to engage in passive activity, like a fireman waiting to go to a fire or a stenographer waiting for a court appearance. So they fail in the second prong, and I probably don't need to spend too much time on the second prong because plaintiffs don't even attempt to really argue it. In the more modern age, a lawyer checking ESPN at work, that would put them out of compensation time, right? Well, not under the federal law because then you are in the continuous workday. If you started your first principal activity, then yes, I never do that. Okay, sometimes. We are suggesting that under either prong, the controlled by the employer prong, and by the way, to the extent that plaintiff is suggesting that employee choice doesn't matter under the first prong, in addition to ignoring what the Ninth Circuit said in sending this case for certification, in addition to the Overton v. Disney case, which they diligently avoid discussing, you've got the fact that when you read the wage order, it says controlled by the employer or suffered or permitted to work when required by the employer. Whether or not required by the employer. That whether or not required by the employer language modifies only the suffered or permitted to work prong. And so what the California Industrial Wage Commission said was, as to suffered or permitted to work, we don't care whether the employer was requiring you to do it. If you are working for the employer, the employer should pay you for it. But on the controlled by the employer prong, it's not modified by the whether or not required by the employer. The negative implication of which is to be controlled by the employer needs to be required by the employer. And here, as the record is replete with evidence, undisputed, and not even really mentioned here today, the plaintiffs were not required by the employer. And that same goes, well, I'll leave it at that. Thank you very much. We request that the court affirm. Thank you. Rebuttal? Just as a preliminary matter, this did come up as a summary judgment order. There are plenty of disputed material facts, which would be enough to reverse the decision of the court in that the disputed material facts should have prevented the summary judgment from being granted. Defendant's own evidence shows that employees were waiting three to five minutes in lines. Another disputed issue, my client testified that she never heard of express lanes. He keeps talking about express lane, express lane, express lane. She never heard of it, and that was in her deposition. The choice thing is illusory. We don't have any evidence as to how many people use the express lanes. That alone would justify reversal of the order granting summary judgment. The Overton case. That one, you could drive your car to the Disney parking lot, and then you take the employer's shuttle over to the park. But you could also, if you wanted to get to work, you could take the city bus. You could take a cab. You could have your friend drop you off. You could walk. You could ride your bike. There were a million different ways you could get to work. You didn't have to take the employee bus. So that way, Overton is not relevant to this discussion. We've already covered, and the court knows, that these security searches were mandatory for everyone. Whether there was an express lane or not, they still had to wait and were restrained from leaving. Control is the only factor necessary for determining compensation, as stated in Marillion. Under California law, it is only necessary that the worker be subject to the control of the employer in order to be entitled to compensation. And then he brings up the FILSA factors again, about passive activity, exerted activity. That kind of analysis is what the Supreme Court reversed in the Augustus decision. The Court of Appeal, on the on-call radio rest break one, the Court of Appeal said that although on-call hours constitute hours worked, remaining available to work is not the same as performing work. And the California Supreme Court reversed that, saying no, if you're not completely duty free, that's a rest period violation. You can't enter into that discussion of what is performing work when control is all that's required. And the sufferer permit standard, the only thing that's required for that is knowledge of the employer that that activity is occurring, and the employer knows that activity is occurring because it required it. So we respectfully submit that we also survived that problem. The Apple Court is deciding a bag check case. The Starbucks Court has already had oral argument on the de minimis case. The California Supreme Court wants to dispose of these issues. They're the natural forum to decide those questions of state law, and if the court would like to grant the motion to certify the question, we would renew that motion. Thank you. Thank you, counsel. The case will be submitted. We'll take the next case. Thank you, counsel.